**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**El PASO DIVISION**

| | |
|---|---|
| VIAAS INC., | § |
| | § |
|        Plaintiff, | § |
| | § |
| v. | §   **Case No. 6:22-CV-01047-KC** |
| | § |
| CISCO SYSTEMS, INC., | §   **JURY TRIAL DEMANDED** |
| | § |
|        Defendant. | § |
| | § |
| | § |

**CISCO SYSTEMS, INC.'S MOTION TO DISMISS COMPLAINT OF VIAAS INC.
PURSUANT TO FED. R. CIV. P. 12(C) FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................... 2

    A. The Patents-in-Suit............................................................................................................. 2

        1. The '888 Patent. ........................................................................................................ 2

        2. The '069 Patent. ........................................................................................................ 4

    B. Relevant Facts from the Complaint ................................................................................... 5

III. LEGAL STANDARDS ........................................................................................................ 5

    A. Motion for Judgment on the Pleadings .............................................................................. 5

IV. ARGUMENT ........................................................................................................................ 7

    A. The '888 Patent, Claim 1 Requires "*Wherein Transmitting an Event of Interest Comprises: Transmitting Immediately When Directed and Storing if Immediate Transmission Fails*." The Evidence VIAAS Cites Supports No Such Allegation. ................................................................................................................. 7

        1. VIAAS Writes Out the "If" from "Storing if Immediate Transmission Fails." ........................................................................................................ 9

        2. VIAAS Does Not Allege "Transmitting" and "Storing" the Same "Event of Interest." ................................................................................................... 9

    B. VIAAS Does Not Allege "*Generating Multiple Representations of the Event of Interest . . . Wherein the Multiple Representations Include Both Video and Still Images of the Event Derived from the Video*" as Required by Claim 1 of the '069 Patent. ............................................................................... 11

V. CONCLUSION.................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................................5

*Bot M8 LLC v. Sony Corp.*,
   4 F.4th 1342 (Fed. Cir. 2021) .......................................................................................6, 8, 9, 10

*Bowlby v. City of Aberdeen*,
   681 F.3d 215 (5th Cir. 2012) .....................................................................................................5

*Chhim v. Univ. of Tex. At Austin*,
   836 F.3d 467 (5th Cir. 2016) .....................................................................................................6

*De La Vega v. Microsoft Corp.*,
   No. 6:19-cv-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) .................6, 8, 9, 10

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
   313 F.3d 305 (5th Cir. 2002) .....................................................................................................5

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) .....................................................................................................5

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
   2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) .......................................5, 6

*Vervain, LLC v. Micron Tech., Inc.*,
   No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ......................6, 8, 9, 10

**Statutes**

35 U.S.C. § 271(a) ...........................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 8(a) ..........................................................................................................................5

## **STATEMENT OF ISSUES**

1. Has VIAAS set forth a plausible allgation of infringement for claim 1 of U.S. Patent Nos. 8,558,888, given that it fails to allege storing *if* immediate transmission fails?

2. Has VIAAS set forth a plausible allgation of infringement for claim 1 of U.S. Patent Nos. 9,472,069, given that it fails to allege generating video *and* still images?

Defendant Cisco Systems, Inc. ("Cisco" or "Defendant") respectfully requests that this Court grant its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c).

## I. INTRODUCTION

Plaintiff VIAAS INC. ("VIAAS" or "Plaintiff") filed its Complaint against Cisco alleging infringement of U.S. Patent Nos. 8,558,888 (the "'888 patent") and 9,472,069 (the "'069 patent") (collectively, the "Patents-in-Suit"). Specifically, VIAAS's complaint sets forth how Cisco supposedly infringes one claim of each of the Patents-in-Suit through sale of Cisco's "Meraki Smart Camera System." Dkt. 1, ¶¶ 16, 18, 25. The asserted claims of the Patents-in-Suit relate to the recording of "events of interest" captured from a particular type of security camera, and require very specific functionality, including (1) "transmitting immediately when directed and *storing if immediate transmission fails*," and (2) "*generating multiple representations of the event of interest* determined by the PORT, *wherein the multiple representations include both video and still images of the event derived from the video*." Dkt. 1-1 ('888 patent, claim 1 and '069 patent, claim 1) (emphasis added),

In order to sufficiently allege that an accused product infringes a patent claim, as required to satisfy the *Iqbal / Twombly* standard, a plaintiff must plausibly allege that the product satisfies each limitation of that claim. *See Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019) (a "plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims."). VIAAS's complaint fails to make a plausible allegation with respect to at least one

1

limitation of claim 1 of the '888 patent and claim 1 of the '069 patent.[1]  As a result, the Court should dismiss VIAAS's complaint.

## II. FACTUAL BACKGROUND

### A. The Patents-in-Suit

VIAAS's complaint alleges infringement of two claims: claim 1 of the '888 patent, and claim 1 of the '069 patent (collectively, "the asserted claims").[2]

#### 1. The '888 Patent.

The '888 patent discloses "[a] video surveillance terminal [that] avoids network congestion." Dkt. 1-1, Ex. A ('888 patent), Abstract. The '888 patent explains that earlier technology (termed "prior art") already disclosed "motion detection," "processing a constant sequence of images (video)," and "detecting when pixels are changed . . . to indicate an event of interest." *Id*., 3:25-33. The '888 patent also explains that there was a need for "equipment that is extremely easy to setup and maintain by using a cloud computing infrastructure and strategy." *Id*., 3:37-39.

The '888 patent then describes its supposed invention: a type of camera termed a "Port of Recordation Terminal (PORT)" that "captures and analyzes images to determine if there is an event of interest" and "compresse[s], format[s] and store[s]" these events of interest. *Id*., 3:40-50. "A reference to each asset is transmitted in near real-time comprising a compressed single frame" to facilitate "access [to] the associated asset at a later time if desired." *Id*., 3:50-58.

---

[1] There are numerous reasons the accused products do not infringe. But, for purposes of this motion to dismiss, Cisco is highlighting one basic reason for each asserted claim that renders the allegations implausible.

[2] The '069 patent is a divisional of the '088 patent, meaning that both share a common specification.

Importantly, "[t]he PORT comprises a bandwidth controller circuit which regulates the . . . transmission of assets and references under direction of a plurality of policies . . . [that] are selected based on a plurality of conditions including . . . configured bandwidth utilization . . . and network connectivity status." *Id.*, 4:6-11. With reference to Figure 6, the patent explains that "the present invention comprises a method for operating an embodiment *for recovery after network outage or congestion.*" *Id.*, 6:41-43. As the '888 patent explains, in this "embodiment, references are stored in the archive store 240 during network outage or congestion as controlled by the bandwidth controller 232." *Id.*, 6:43-45. And "[w]hen the method determines that the outage is ended or that bandwidth constraints have loosened, a new policy is selected, which directs that references which have been queued in archive 240 be transmitted immediately with no bandwidth restrictions." *Id.*, 6:49-52. In short, transmission is held in the case of a loss of connection or bandwidth shortage and the data to be transmitted is stored until normal connection or bandwidth conditions return, and then transmission resumes.

Asserted claim 1 of the '888 patent, with limitations relevant to this motion bolded for ease of reference:

1. A method for operating an apparatus for to reliably maintain high complexity continuous data over a low bandwidth and unreliable connection, the apparatus comprising:

   a point of recordation terminal (PORT) coupled to a connection, the method comprising capturing, and transmitting, an event of interest, wherein capturing an event of interest comprises the following processes:

   determining when an event of interest occurs;

   selecting an extent of data associated with the event of interest;

   efficiently recording the selected extent of data;

   deriving a compact representation of the event of interest; and

>   storing the recorded events;
>
>   wherein transmitting an event of interest comprises the following processes:
>
>   ***transmitting immediately when directed and storing if immediate transmission fails***;
>
>   opening an https client session;
>
>   opening an https server session; connecting between an https client and server;
>
>   transmitting with link level encryption;
>
>   storing recorded events of interest locally; and
>
>   transmitting when an acceptable amount of bandwidth becomes available.

### 2. The '069 Patent.

The '069 patent discloses that the PORT "is configured to detect one or more events of interest, generate one or more representations of the event and establish the timing relationship among the multiple representations of the event of interest." Dkt. 1-1, Ex. B ('069 patent), Abstract. The PORT contains an "asset & event capture circuit 210 comprising a high resolution digital camera, a video encoding & compression circuit, and 40 an image encoding & compression circuit." *Id*., 5:36-45. When the "asset capture circuit has detected an event of interest, an asset is initiated and processed as directed by the appropriate policy, normally storing into an archive." *Id*., 5:45-49. This involves "selecting a representative frame of the video to scale and compress, recording the beginning of the event of interest, and accumulating relevant metadata about the generated assets." *Id*., 5:49-53.

Asserted claim 1 of the '069 patent, with limitations relevant to this motion bolded for ease of reference:

>   1. A method for generating and storing an asset from a Point of Recordation Terminal (PORT), comprising:

>   collecting a unique identification of the PORT;
>
>   determining an event of interest by the PORT;
>
>   ***generating multiple representations of the event of interest*** determined by the PORT, ***wherein the multiple representations include both video and still images of the event derived from the video***;
>
>   identifying timing relationship between the multiple representations of the event of interest determined by the PORT;
>
>   associating the unique identification of the PORT with the multiple representations of the event of interest determined by the PORT;
>
>   encrypting and uploading the multiple representations of the event of interest with the unique identification of the PORT for cloud storage.

### B. Relevant Facts from the Complaint

VIAAS alleges that Cisco directly infringes the asserted claims by making, using, testing, selling, offering for sale and importing into the United States Cisco's Meraki Smart Cameras. Dkt. 1, ¶¶ 16, 18, 25. The claim charts that VIAAS attaches to the complaint, which purportedly describe how the elements of the asserted claims are infringed by Cisco's Meraki Smart Camera System (*id.* ¶¶ 23, 30), cite publicly available data sheets for Meraki MV cameras, and do not cite any testing of the Meraki MV cameras. Dkt. 1-1, Exs. C-D. The complaint does not provide any evidence resulting from the testing of Cisco's Meraki Smart Cameras.

## III. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

Rule 12(c) motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotation marks omitted). In order to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is not plausible unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In making this assessment, courts may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). While factual allegations set out in the pleadings should be taken in the light most favorable to the nonmoving party, courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the plausibility standard. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant "without authority makes, uses, offers to sell, or sells any patented invention…during the term of the patent." 35 U.S.C. § 271(a); Fed. R. Civ. P. 8(a); *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, 2:15-cv-1955-JRG, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016). When the complaint fails to allege that the defendant satisfies *each element of the claim*, claims of direct infringement are not plausible and should be dismissed. *See De La Vega v. Microsoft Corp.*, No. 6:19-cv-00612-ADA, 2020 WL 3528411, at *7 (W.D. Tex. Feb. 11, 2020). A conclusory recitation that "merely track[s] the claim language" is "insufficient to give rise to a reasonable inference" of infringement. *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-

6

ADA, 2022 WL 23469, at *7 (W.D. Tex. Jan. 3, 2022) (quoting *Bot M8 LLC v. Sony Corp.*, 4 F.4th 1342, 1355 (Fed. Cir. 2021) ); see also *Chhim v. Univ. of Tex. At Austin*, 836 F.3d 467, 469 (5th Cir. 2016) ("[W]e do not credit conclusory allegations or allegations that merely restate the legal elements of a claim.").

## IV. ARGUMENT

VIAAS's allegations, even if taken as true, do not create a plausible allegation of infringement for either of the asserted claims. The citations that VIAAS relies upon provide no support for its proposed contention, and worse yet, contradict the requirement of the claim. Because VIAAS's complaint does not set forth a plausible allegation of infringement, the Court should dismiss it with prejudice.

### A. The '888 Patent, Claim 1 Requires "*Wherein Transmitting an Event of Interest Comprises: Transmitting Immediately When Directed and Storing if Immediate Transmission Fails.*" The Evidence VIAAS Cites Supports No Such Allegation.

As shown in the highlighted portions below, Claim 1 of the '888 patent requires "transmitting immediately when directed and storing if immediate transmissions fails." Dkt. 1-1, Ex. A at Claim 1. However, VIAAS's cited evidence does not plausibly support the functionality required by the claim.

> 1. A method for operating an apparatus for to reliably maintain high complexity continuous data over a low bandwidth and unreliable connection, the apparatus comprising:
> a point of recordation terminal (PORT) coupled to a connection, the method comprising
> capturing, and
> transmitting, an event of interest, wherein capturing an event of interest comprises the following processes:
> determining when an event of interest occurs;
> selecting an extent of data associated with the event of interest;
> efficiently recording the selected extent of data;
> deriving a compact representation of the event of interest; and
> storing the recorded events; wherein transmitting an event of interest comprises the following processes:
> ==transmitting immediately when directed and storing if immediate transmission fails;==
> opening an https client session;
> opening an https server session;
> connecting between an https client and server;
> transmitting with link level encryption;
> storing recorded events of interest locally; and
> transmitting when an acceptable amount of bandwidth becomes available.

VIAAS identifies "the immediate alert a user receives when an event of interest occurs in range of a device," such as "motion detection," as data from an event of interest that is transmitted.

> Meraki transmits data from events of interest immediately as evidenced by the immediate alert a user receives when an event of interest occurs in range of a device. Examples of events of interest include motion detection.
>
> **MV Alerts**
> Network-wide alerts can be configured for the following MV camera event:
>
> **A camera goes offline for (x) minutes**
> Sends an email if a camera is unreachable from the dashboard for the configured number of minutes.
> Please note that the camera may still be functioning, this only indicates that it is unable to contact the dashboard.
>
> **A camera has a potential issue with Cloud Archive**
> Sends an email if one or more cameras in the network are detected to have an issue with video upload to Cloud Archive. The email is only sent once for the entire network and not for each individual camera. This alert is enabled by default on all networks which include cameras with cloud archive licenses.
>
> **Motion Alerts**
> Motion events get triggered when a portion of an area in the MV's field of view is changed, causing motion to be detected. When this occurs, an alert will be generated which will be directly sent to the configured email address. An example of what the email alert looks like is shown below:

Dkt. 1-1, Ex. C at 10-11. Claim 1 of the '888 patent requires that this event is "transmit[ed] immediately when directed and stor[ed] if immediate transmission fails." VIAAS's allegation is not plausible for two very simple reasons.

8

### 1. VIAAS Writes Out the "If" from "Storing if Immediate Transmission Fails."

For "transmitting immediately when directed," VIAAS alleges that "[the] Meraki [camera] transmits data from events of interest immediately as evidenced by the immediate alert a user receives when an event of interest occurs in range of a device." Dkt. 1-1, Ex. C at 10. VIAAS alleges that this "transmitted data from events" is an email sent in the event of a (i) "Motion Alert" or (ii) camera malfunction. *Id*.

For "storing if immediate transmission fails," VIAAS alleges that "[the] Meraki cameras can store data locally and record while offline. This way, the data is stored even if transmission fails, such as in a power outage." *Id*. at 11. But data storage (i.e., storage of video) on the Meraki cameras does not occur if, *i.e.*, in the event that, the (i) Motion Alert email or (ii) camera malfunction. Rather, the data (video) is stored on the Meraki camera *regardless* of the (i) Motion Alert email or (ii) camera malfunction. As such, VIAAS's allegation fails to address the "storing *if* immediate transmission fails," because it simply writes the "if" out of the claim. Because VIAAS does not provide any allegation (let alone a plausible allegation) with respect to an explicit limitation of the claim, the Court should dismiss VIAAS's claim with respect to the '888 patent. *De La Vega*, 2020 WL 3528411, at *7; *Vervain*, 2022 WL 23469, at *7 (quoting *Bot M8*, 4 F.4th at 1355).

### 2. VIAAS Does Not Allege "Transmitting" and "Storing" the Same "Event of Interest."

For "transmitting immediately when directed," VIAAS alleges that "[the] Meraki [camera] transmits data from events of interest immediately as evidenced by *the immediate alert a user receives when an event of interest occurs in range of a device*." Dkt. 1-1, Ex. C at 10. As shown by VIAAS's cited evidence, provided below) this is an email sent to the user when a camera fails

9

or motion is detected. *Id*. (see "an email if a camera is unreachable" or when "motion [is] detected . . . an alert [that] will be generated which will be directly sent to the configured email address.")

> Meraki transmits data from events of interest immediately as evidenced by the immediate alert a user receives when an event of interest occurs in range of a device. Examples of events of interest include motion detection.
>
> **MV Alerts**
>
> Network-wide alerts can be configured for the following MV camera event:
>
> **A camera goes offline for (x) minutes**
> Sends an email if a camera is unreachable from the dashboard for the configured number of minutes.
> Please note that the camera may still be functioning, this only indicates that it is unable to contact the dashboard.
>
> **A camera has a potential issue with Cloud Archive**
> Sends an email if one or more cameras in the network are detected to have an issue with video upload to Cloud Archive. The email is only sent once for the entire network and not for each individual camera. This alert is enabled by default on all networks which include cameras with cloud archive licenses.
>
> **Motion Alerts**
>
> Motion events get triggered when a portion of an area in the MV's field of view is changed, causing motion to be detected. When this occurs, an alert will be generated which will be directly sent to the configured email address. An example of what the email alert looks like is shown below:

*Id*. (annotated with highlights and underline). In short, VIAAS alleges that "the event" being transmitted is an email reflecting the camera outage or motion that is detected. But, as shown below, for "storing," the event of interest, VIAAS does not point to an email reflecting a camera outage or motion that is detected. Instead, it points to generic recording of video.

> Meraki cameras can store data locally and record while offline. This way, the data is stored even if transmission fails, such as in a power outage. Meraki cameras have sufficient storage capacity to retain recordings of events of interest. *See below*.
>
> Each MV smart camera comes with integrated, ultra-reliable, industrial-grade storage. This cutting-edge technology allows the system to efficiently scale to any size, with storage expanding with the addition of each camera. Plus, as video is stored locally, administrators can rest easy knowing that even if the network connection cuts out, the cameras will continue to record footage.
>
> Source: https://meraki.cisco.com/product-collateral/mv-family-datasheet/?file

*Id*. at 11 (annotated with highlights). Because VIAAS does not make an allegation regarding "transmitting" and "storing" with respect to the same "event of interest," the Court should dismiss VIAAS's claim with respect to the '888 patent. *De La Vega*, 2020 WL 3528411, at *7; *Vervain*, 2022 WL 23469, at *7 (quoting *Bot M8*, 4 F.4th at 1355).

10

**B. VIAAS Does Not Allege "*Generating Multiple Representations of the Event of Interest . . . Wherein the Multiple Representations Include Both Video and Still Images of the Event Derived from the Video*" as Required by Claim 1 of the '069 Patent.**

As shown in the highlighted portions below, Claim 1 of the '069 patent requires "generating multiple representations of the event of interest . . . wherein the multiple representations include both video and still images of the event derived from the video." Dkt. 1-1, Ex. B at Claim 1. However, VIAAS's cited evidence does not plausibly support the functionality required by the claim.

> 1. A method for generating and storing an asset from a Point of Recordation Terminal (PORT), comprising:
> collecting a unique identification of the PORT;
> determining an event of interest by the PORT;
> ==generating multiple representations of the event of interest determined by the PORT, wherein the multiple representations include both video and still images of the event derived from the video;==
> identifying timing relationship between the multiple representations of the event of interest determined by the PORT;
> associating the unique identification of the PORT with the multiple representations of the event of interest determined by the PORT;
> encrypting and uploading the multiple representations of the event of interest with the unique identification of the PORT for cloud storage.

'069 patent, Claim 1 (annotated). For the '069 patent, VIAAS alleges that "the event of interest" is satisfied by "a wide variety of event detection through hardware like motion detection and software." Dkt. 1-1, Ex. D at 3-4. As shown below, to satisfy "generating multiple representations of the event of interest . . . wherein the multiple representations include *both video and still images*," VIAAS alleges that "Meraki cameras continuously record and upload *the video feed to the cloud*" and that "[a]n alert is sent out when an event occurs." VIAAS does not clearly indicate what it contends is the "still image"; this alone requires VIAAS to replead to set forth a plausible

allegation. *Vervain*, 2022 WL 23469, at *7 (quoting *Bot M8*, 4 F.4th at 1355).



Dkt. 1-1, at 4-5 (annotated with highlights). Further, VIAAS does not allege that there is any "still image[] of the event *derived from the video*." This also underscores why the Court should dismiss VIAAS's allegation of infringement for the '069 Patent. *De La Vega*, 2020 WL 3528411, at *7; *Vervain*, 2022 WL 23469, at *7 (quoting *Bot M8*, 4 F.4th at 1355).

## V. CONCLUSION

For the reasons stated above, Cisco respectfully requests that the Court dismiss VIAAS's claims of infringement with respect to the '888 and '069 patents.

DATED:  January 17, 2023	Respectfully Submitted,

   */s/ Mark N. Osborn*
Mark N. Osborn
State Bar No. 15326700
mark.osborn@kempsmith.com
Shelly W. Rivas
State Bar No. 24003145
Shelly.rivas@kempsmith.com
**KEMP SMITH LLP**
221 N. Kansas
Suite 1700
El Paso, TX 79901
Telephone: (915) 553-4424
Facsimile: (915) 546-5360


Nimalka Wickramasekera
(Pro Hac Vice to be filed)
nwickramasekera@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue
38th Floor
Los Angeles, CA 90071
Telephone: (213) 615-1819
Facsimile: (213) 294-4700

Krishnan Padmanabhan
(Pro Hac Vice to be filed)
kpadmanabhan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY  10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Saranya Raghavan
(Pro Hac Vice to be filed)
sraghavan@winston.com
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL  60601
Telephone: (312) 558-7574
Facsimile: (312) 558-5700


ATTORNEYS CISCO SYSTEMS, INC.

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on January 17, 2023, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means.

                                                */s/ Mark N. Osborn*
                                                Mark N. Osborn