**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| VIAAS, INC., | Case No. 6:22-cv-01047-KC |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| CISCO SYSTEMS, INC., | |
| Defendant. | |

**DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO TRANSFER VENUE**

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES ........................................................................................ IV

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ...................................................................................... 1

     A.    Cisco and Its Relevant Witnesses Are in Northern California ............... 1

     B.    Key Third-Party Witnesses Are in Northern California ........................ 3

III.    LEGAL STANDARD .............................................................................. 4

IV.    ARGUMENT ........................................................................................... 5

     A.    VIAAS Could Have Filed This Case in the Northern District of California ......... 5

     B.    Private-Interest Factors Heavily Favor Transfer ................................... 6

          1.    The sources of proof are in California. ....................................... 6

          2.    No compulsory process exists over relevant third-party witnesses in this District. ....................................................... 7

          3.    Costs and burdens for willing witnesses are significantly less in California than in this District ................................... 7

          4.    Other practical concerns favor transfer. ..................................... 9

     C.    Public-Interest Factors Favor Transfer .................................................. 9

          1.    California has a strong local interest in this case. .................... 10

          2.    Court congestion favors transfer. ............................................ 10

          3.    The other public-interest factors are neutral. ........................... 11

     CONCLUSION ....................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)........................................................................7

*In re Adobe Inc.*,
   823 F. App'x 929 (Fed. Cir. 2020) ................................................................11

*In re Apple Inc.*,
   2022 WL 1676400 (Fed. Cir. May 26, 2022) ................................................10

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020)......................................................................11

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
   2015 WL 123852 (E.D. Tex. Jan. 7, 2015).....................................................8

*Clyce v. Butler*,
   2015 WL 225057 (W.D. Tex. Jan. 15, 2015) ..................................................4

*Datascape, Ltd. v. Dell Techs., Inc.*,
   2019 WL 4254069 (W.D. Tex. June 7, 2019) .................................................7

*In re EMC Corp., Decho Corp. & Iomega Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012)........................................................................4

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)................................................................6, 7, 9

*In re Google*,
   2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) .............................................8, 9

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) ........................................................................4

*In re Link_A_Media Devices Corp.*,
   662 F.3d 1221, 1224 (Fed. Cir. 2011) ...........................................................10

*In re NetScout Sys., Inc.*,
   2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)...................................................9

*Network-1 Sec. Sols., Inc. v. D-Link Corp.*,
   433 F. Supp. 2d 795 (E.D. Tex. 2006).............................................................6

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009) ..........................................................................4, 5, 10

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
   2010 WL 3855520 (E.D. Tex. Sept. 30, 2010) ...................................................................7

*In re Pandora Media, LLC*,
   2021 WL 4772805 (Fed. Cir. Oct. 13, 2021) ......................................................................8

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
   2011 WL 2937365 (E.D. Tex. July 19, 2011) ...................................................................12

*In re Samsung Elecs. Co.*,
   2 F.4th 1371 (Fed. Cir. 2021) ...........................................................................................11

*In re Toyota Motor Corp.*,
   747 F.3d 1338 (Fed. Cir. 2014) ...........................................................................................9

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ......................................................................................5, 11

*Uniloc USA Inc. v. Box, Inc.*,
   2018 WL 2729202 (W.D. Tex. June 6, 2018) ....................................................................9

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ............................................................................................................1

*Viking Techs., LLC v. Assurant, Inc.*,
   2021 WL 3520756 (E.D. Tex. June 21, 2021) ..................................................................10

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ...........................................................................................4, 5

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ......................................................................................5, 7, 8

**Statutes**

28 U.S.C. § 1331 ....................................................................................................................6

28 U.S.C. § 1404(a) .....................................................................................................1, 2, 5, 9

## <u>STATEMENT OF ISSUES</u>

1.      Should this case be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a)?

Defendant Cisco Systems, Inc. ("Cisco"), pursuant to 28 U.S.C. § 1404(a), respectfully moves to transfer this action to the Northern District of California for the convenience of parties and witnesses and in the interest of justice.[1]

## I.    INTRODUCTION

This lawsuit has strong ties to the Northern District of California. On October 6, 2022, VIAAS, Inc. ("VIAAS") sued Cisco in the Waco Division of the Western District of Texas, alleging infringement of United States Patent No. 8,558,888 ("the '888 patent") and 9,472,069 ("the '069 patent") (collectively, the "Asserted Patents") based on sales of Cisco's Meraki MV Cameras (or "Accused Products"). (Compl. ¶¶ 12–13, 16.) Pursuant to the Western District of Texas's assignment system for patent cases filed in Waco, this action has been assigned to Judge Kathleen Cardone in the El Paso Division. But this case never belonged in the Western District of Texas to begin with—be it in Waco, El Paso, or its other divisions. Cisco developed the Accused Products in Northern California, and the overwhelming majority of sources of proof lie in that district. Both Cisco and VIAAS, as well as key third parties, such as prior artists, are all located in Northern California. Cisco thus respectfully requests that this Court exercise its discretion and transfer this action to the Northern District of California because it would be far more convenient for the parties and the witnesses and doing so would prevent the waste of "time, energy, and money." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

## II.    BACKGROUND

### A.    Cisco and Its Relevant Witnesses Are in Northern California

Cisco's relevant engineering and product management personnel are located in San Francisco, within the Northern District of California. (Bentinck Decl. ¶¶ 4–5, 7; Pham Decl. ¶ 8.)

---

[1] The parties met and conferred regarding Cisco's proposed motion to transfer, and counsel for VIAAS indicated that they opposed transfer.

In fact, the vast majority of personnel with any relationship to the Cisco Meraki MV Cameras are similarly based in the Northern District of California. (*Id.*) The three senior managers at Cisco responsible for the Cisco Meraki MV Cameras, including hardware, software, and product management, are all based in Cisco's San Francisco offices within the Northern District of California. (*Id.* ¶ 5.) This includes the product manager that has the longest history with the Cisco Meraki MV Cameras, Mr. George Bentinck. (*Id.* ¶ 6.) The Cisco employees in Northern California working on the Cisco Meraki MV Cameras also include Harshdeep Singh, the product manager for Camera Systems and Infrastructure who has responsibility for features such as local recording of video, and uploading of video to the cloud, which have particular relevance in this case. (*Id.* ¶¶ 7, 9.) Mr. Singh, like all the other product managers responsible for features of the Accused Products, report to Scott Wierstra, who is based in Cisco's San Francisco offices as well. (*Id.*) Unsurprisingly, Cisco's Meraki engineering and information technology team that manages its document databases are also based in Cisco's San Francisco offices. (*Id.* ¶ 9.)

Cisco's ties to Northern California are long-running and well established. Cisco is headquartered in San Jose, California, which is within the Northern District of California. (Compl. ¶ 2.) Cisco's management and primary research-and-development facilities are located in Northern California, including near San Jose and San Francisco. (Pham Decl. ¶ 4.) And 12,845 Cisco employees are based in the Northern District of California (out of 28,411 employees nationwide). (*Id.* ¶ 5.) While Cisco has satellite offices in Austin and El Paso within the Western District of Texas, approximately forty engineers involved in the hardware development, software development, and other technology development related to the Cisco Meraki MV Cameras are based in Cisco's San Francisco, California offices. (Bentinck Decl. ¶ 4.)

**B.      Key Third-Party Witnesses Are in Northern California**

Numerous third-party witnesses with knowledge related to the case are based in Northern California. The '069 patent was originally assigned to Barracuda Networks, Inc. ("Barracuda"). (Compl. Ex. B (Dkt. 1-1) (face of '069 patent).) Barracuda is headquartered in Campbell, California, within the Northern District.[2] As detailed by defendants Amazon.com, Inc., Ring LLC, and Google LLC in parallel litigations filed in this Court by VIAAS involving the same patents, VIAAS lacks standing to bring suit due to deficiencies in the publicly-filed assignment records for the Asserted Patents. (*See* Case No. 6:22-cv-01041-KC, Dkt. 13 and Case No. 6:22-cv-01048-KC, Dkt. 10.) In addition to showing a break in the chain of title to the Asserted Patents from the original assignee to VIAAS, these public records also demonstrate that Barracuda retains an ownership interest in the Asserted Patents. (*Id.*) Barracuda's interests are further evidenced by security agreements using the '069 patent (among others) as collateral for loans and credits with financial institutions. (*Id.*) As such, Barracuda is expected to have documents related to the Asserted Patents, including documents related to a threshold issue in this case.

Similarly, key prior art inventors are located in the Northern District of California, such as one or more of the named inventors of U.S. Patent Nos. 7,847,820; 9,286,777; 7,933,455; and 8,130,285, which are all assigned to 3VR Security, Inc., which is headquartered in the Northern District of California.[3] (Padmanabhan Decl. Ex. A, Prior Art Patents.) For example, Dr. Robert Vallone, a named inventor of each of these patents, currently resides in Palo Alto, California (Padmanabhan Decl. Ex. B, Vallone LinkedIn Profile), and will likely have information pertaining to prior art video surveillance systems developed by 3VR Security Inc. As another example, one

---

[2] *See* Barracuda Networks' website listing the address of its headquarters in Campbell, California, https://www.barracuda.com/company/contact.

[3] *See* LinkedIn for 3VR, https://www.linkedin.com/company/3vr.

or more of the named inventors of U.S. Patent No. 8,027,542 are also located within the Northern District of California. (Padmanabhan Decl. Ex. A.) The named inventor, Dr. Kannan Ramchandran, is the Gilbert Henry Gates Endowed Chair of the Department of Electric Engineering and Computer Science at the University of California, Berkeley, which sits within the Northern District of California. (Padmanabhan Decl. Ex. C, Dr. Ramchandran's Website Bio.) Dr. Ramchandran will likely have information relating to prior art publications and systems to the Asserted Patents.

## III.   LEGAL STANDARD

Section 1404(a) allows a district court to transfer any civil action to any other district or division where the action might have been brought for the convenience of the parties and witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a). To determine whether to grant a motion to transfer under § 1404(a), the Court should balance the private convenience interests of the parties and the public interest in the fair and efficient administration of justice—i.e., the "private"- and "public"-interest factors. *See, e.g.*, *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009). In patent cases, the Federal Circuit applies the law of the appropriate regional circuit to venue issues. *See In re EMC Corp., Decho Corp. & Iomega Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012). Fifth Circuit law applies to the Court's determination of whether transfer is warranted.

"The starting point on a motion for transfer of venue is determining whether the suit could have originally been filed in the destination venue." *Clyce v. Butler*, 2015 WL 225057, at *2 (W.D. Tex. Jan. 15, 2015). If the case could originally have been filed in the destination forum, then the district court will "[take] note of the four private interest factors and four public interest factors that have traditionally been identified as the governing factors in determining whether the transferor or the transferee district is the more convenient [forum]." *In re Juniper Networks, Inc.*,

14 F.4th 1313, 1316 (Fed. Cir. 2021). The four private factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The four public-interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.*

Notably, "the Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer for the convenience of the parties." *In re Nintendo Co.*, 589 F.3d at 1200. "Rather, the plaintiff's choice of venue corresponds to the burden that a moving party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)).

## IV.    ARGUMENT

### A.    VIAAS Could Have Filed This Case in the Northern District of California

There is no question that VIAAS could have brought its claims in the Northern District of California, since Cisco is headquartered in that district. (Compl. ¶ 2.) Subject matter jurisdiction is proper under 28 U.S.C. § 1331 because VIAAS asserts federal-patent-law claims, and all federal courts, including the Northern District of California, have federal-question jurisdiction over such claims. Because this action could have been brought in the Northern District of California, the transfer analysis turns on the weight of the public and private factors.

## B.       Private-Interest Factors Heavily Favor Transfer

The balance of the four private-interest factors weighs heavily in favor of transfer to the Northern District of California.

### 1.       The sources of proof are in California.

The vast majority of relevant evidence in this matter is likely to come from Cisco, the developer of the Accused Products. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). Nearly all the work developing the Accused Products was performed, and the associated evidence lies, in Northern California. (Bentinck Decl. ¶ 4.) Cisco's relevant witnesses, including the relevant engineering and product marketing staff, similarly reside in the Northern District of California. (*Id.* ¶¶ 4–8.)

Finally, witnesses are "of immense importance" if they have "personal knowledge of relevant prior art [because they] have the possible power of proving the plaintiff's patent invalid." *Network-1 Sec. Sols., Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 803 (E.D. Tex. 2006). Prior art inventors Dr. Robert Vallone and Dr. Kannan Ramchandran are located in the Northern District of California. (*See* Section II.B *supra*.)

There are barely any relevant sources of proof (if any) available only in the Western District of Texas. The knowledgeable Cisco personnel are in Northern California. (Bentinck Decl. ¶¶ 4–5, 7; Pham Decl. ¶ 8.) As for Cisco documents, any relevant electronic Cisco documents may be accessed from any jurisdiction, but the Meraki engineering and information technology team that manages its document databases are based in Cisco's San Francisco offices. (Bentinck Decl. ¶ 9.) Here, the unique sources of evidence are Cisco's witnesses and documents, all of which can be found in the Northern District of California.

The presence of the overwhelming majority of evidence in the Northern District of California, and the lack of the same in the Western District of Texas, strongly favors transfer. *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, 2010 WL 3855520, at *4 (E.D. Tex. Sept. 30, 2010) (transfer granted where "majority of [defendants'] U.S. documents" were merely "closer" to the transferee venue than to the Eastern District of Texas); *Datascape, Ltd. v. Dell Techs., Inc.*, 2019 WL 4254069, at *2 (W.D. Tex. June 7, 2019) (holding that the comparative ease of access to sources of proof regarding the accused products supported venue transfer).

**2.      No compulsory process exists over relevant third-party witnesses in this District.**

The Northern District of California is the forum with the power to compel critical documents and testimony from parties with potential ownership interests in the asserted patents. Compulsory process over parties with access to evidence on this threshold and dispositive issue alone tips the scales on this factor in favor of transfer. In addition, several prior artists are also in the Northern District of California. (*See* Section II.B. *supra*.) In this situation, "[t]he fact that the transferee venue is a venue with usable subpoena power … weighs in favor of transfer, and not only slightly." *Genentech,* 566 F.3d at 1345; *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (the subpoena power of the transferee court "surely tips in favor of transfer").

**3.      Costs and burdens for willing witnesses are significantly less in California than in this District.**

The convenience afforded to willing witnesses—"the single most important factor in [the] transfer analysis"—heavily favors litigating this case in Northern California. *Genentech*, 566 F.3d at 1343 (quotation omitted). "Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen*, 545 F.3d at 317. Moreover, where the distance is greater than

100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.*

The overwhelming majority of witnesses essential to the determination of this matter are located in the Northern District of California. (Bentinck Decl. ¶¶ 4–5, 7; Pham Decl. ¶ 8.) Litigating this case in the Western District of Texas would impose a significant hardship on these witnesses, who are nearly 1,000 miles from this Court—especially where there are no direct flights to El Paso from Northern California. (Padmanabhan Decl. Ex. D, Flight Tracker). The Federal Circuit has noted a similar issue with cases filed in Waco. *See In re Google*, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("There is no major airport in the Waco Division … and the Waco courthouse is more than 100 miles from the nearest airport with direct flights to the northeast U.S."). If this case remains in the Western District of Texas, nearly every witness will suffer "the cost and inconvenience imposed … by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *Id.*

Relatedly, the purpose of § 1404(a) "is to prevent the waste of time, energy and money and to protect the litigants, witnesses and the public against unnecessary inconvenience and expense." *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 2015 WL 123852, at *1 (E.D. Tex. Jan. 7, 2015) (quotation omitted). VIAAS does "not share this concern" because it does not "make, manufacture, or sell any products." *Id.* at *19. (*See* Padmanabhan Decl. Ex. E, Delaware Secretary of State Certificate noting that VIAAS is not in good standing.)

When, as here, the vast majority of witnesses are in the transferee district, transfer is strongly favored. *See, e.g.*, *In re Pandora Media, LLC*, 2021 WL 4772805, at *5 (Fed. Cir. Oct. 13, 2021) (noting the inconvenience of requiring the defendant's 14 witnesses to travel from the Northern District of California outweighed the inconvenience of requiring the plaintiff's 4

witnesses to travel from the Western District of Texas instead); *In re Google*, 2021 WL 4427889, at *7 (observing "the center of gravity of this action is clearly in the transferee district, not in the Western District of Texas"); *Genentech*, 566 F.3d at 1345 (concluding that the number of witnesses in, or close to, the Northern District of California "favored transfer, and not only slightly").

### 4.    Other practical concerns favor transfer.

The final factor, judicial efficiency, should be neutral under the circumstances. "[M]ultiple suits involving the same or similar issues *may* create practical problems that will weigh in favor of or against transfer," *Uniloc USA Inc. v. Box, Inc.*, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018) (citations omitted) (emphasis added), however, this fact alone does not necessarily tip this factor against transfer. *See, e.g.*, *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014) (ordering transfer despite the presence of co-pending litigation in the transferor district). Cisco is aware of other cases in this District[4] involving the Asserted Patents. But like this case, these cases are all in the very early stages of litigation, so the Court's familiarity with the Asserted Patents should not affect this factor. Moreover, those cases "involve different defendants and different products … [and] are therefore likely to involve significantly different discovery and evidence." *In re NetScout Sys., Inc.*, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021). Transferring this suit to the Northern District of California should not impact either the Court's or transferee court's ability to efficiently adjudicate the co-pending cases.

### C.    Public-Interest Factors Favor Transfer

A proper weighing of the public-interest factors also advocates for transfer to the Northern District of California. Northern California has a strong local interest in hearing this case, and its

---

[4] *See VIAAS, Inc. v. Amazon.com, Inc. et al.*, 6:22-cv-01041; *VIAAS, Inc. v. ADT LLC*, 6:22-cv-01046; *VIAAS, Inc. v. Google LLC f/k/a Google Inc.*, 6:22-cv-01048.

courts are relatively less congested when compared to this District's. The other public factors are neutral.

### 1.    California has a strong local interest in this case.

The Northern District of California has a compelling interest in this case. The Accused Products were developed by Cisco in Northern California, and the relevant Cisco employees reside there. (Bentinck Decl. ¶¶ 4–5, 7; Pham Decl. ¶ 8.) This case "calls into question the work and reputation of several individuals residing in or near [the Northern District of California] and who presumably conduct business in that community." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Further, Cisco is headquartered in Northern California, and Cisco employs 12,845 people within that district. The Federal Circuit favors transfer when the defendant's headquarters is within the destination venue. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011).

Conversely, the connection between the development of the accused technology and Cisco's offices in the Western District of Texas is minimal. These offices "lack such a connection to the locus of the events giving rise to the dispute." *In re Apple Inc.*, 2022 WL 1676400, at *7 (Fed. Cir. May 26, 2022). And sales of the Accused Products across the United States, including in the Western District of Texas, do not provide "a meaningful connection to the case" for this venue. *In re Nintendo Co.*, 589 F.3d at 1198 (quotation omitted). Northern California's public interest in its business and its employees' reputations therefore favors transfer.

### 2.    Court congestion favors transfer.

The administrative difficulties flowing from court congestion favor transfer to the Northern District of California for "the speedy and efficient administration of justice." *Viking Techs., LLC v. Assurant, Inc.*, 2021 WL 3520756, at *5 (E.D. Tex. June 21, 2021). This District's docket of patent cases is much more congested than that of the Northern District of California. This District

currently has 829 pending patent cases presided over by twelve judges. (*See* Padmanabhan Decl. Ex. F, Lex Machina Comparator.) The Northern District of California, however, has only 262 pending patent cases, presided over by twelve judges. (*Id.*) Since January 1, 2021, 1,882 patent cases have been filed in this District, while only 327 patent cases have been filed in the Northern District of California. (*Id.*) Patent cases in the Northern District of California also have a historically shorter time to dismissal than those in the Western District of Texas—a median of 176 days to dismissal in the Northern District of California, compared with 237 days in this District since 2009. (*Id.*) The Western District of Texas is therefore more congested than the Northern District of California.

Plaintiff may point to this Court's practice of setting an early trial date as weighing against transfer. But a fast-paced prospective schedule should not be assigned significant weight in the transfer analysis. *See, e.g.*, *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020) ("The district court misapplied the law … by relying too heavily on the scheduled trial date. We have previously explained that a court's general ability to set a fast-paced schedule is not particularly relevant[.]"); *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380–81 (Fed. Cir. 2021) ("[W]e cannot say that the prospective speed with which this case might be brought to trial is of particular significance in these cases."); *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020) ("The [court congestion] factor concerns whether there is an appreciable difference in docket congestion between the two forums … . Nothing about the court's general ability to set a schedule directly speaks to that issue."). Accordingly, this factor favors transfer.

### 3. The other public-interest factors are neutral.

The three other public-interest factors are neutral. There are no perceived conflicts of law, and both districts are equally qualified to apply patent law. *In re TS Tech USA Corp.*, 551 F.3d

1315, 1321 (Fed. Cir. 2008); *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 2011 WL 2937365, at *4 (E.D. Tex. July 19, 2011) (order granting motion to transfer venue).

## CONCLUSION

For the foregoing reasons, Cisco respectfully requests that this Court transfer the claims against it to the Northern District of California for the convenience of the parties and to promote the interests of justice.

Dated: February 22, 2023                          Respectfully submitted,

<div style="margin-left: 40%;">

By: */s/* K. Padmanabhan

K. Padmanabhan (*pro hac vice*)
kpadmanabhan@winston.com
WINSTON & STRAWN LLP
200 Park Ave.
New York City, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700

Saranya Raghavan (*pro hac vice*)
Edward A. Day (*pro hac vice* pending)
sraghavan@winston.com
tday@winston.com
WINSTON & STRAWN LLP
35 W Wacker Dr.
Chicago, IL 60601
Tel: (312) 576-4559
Fax: (312) 558-5700

Nimalka Wickramasekera (*pro hac vice*)
nwickramasekera@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750

Mark N. Osborn
mosborn@kempsmith.com
KEMP SMITH LLP
221 N. Kansas, Ste. 1700
El Paso, TX 79901
Tel: (915) 533-4424
Fax: (312) 558-5700

*Attorneys for Defendant,*
*Cisco Systems, Inc.*

</div>

## CERTIFICATE OF CONFERENCE

I certify that on February 17, 2023, counsel for Defendant, Krishnan Padmanabhan, conferred by email with counsel for Plaintiff, William P. Ramey, III, and on that same date was informed by email from counsel for Plaintiff that Plaintiff opposes the relief requested in this motion.

/s/ Mark N. Osborn
Mark N. Osborn


## CERTIFICATE OF SERVICE

I certify that on February 22, 2023, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means.

/s/ Mark N. Osborn
Mark N. Osborn