# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| VIAAS INC., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | **CAUSE NO. WA-22-CV-1041-KC** | |
| § | | |
| AMAZON.COM INC. and RING LLC, § | | |
| § | | |
| Defendants. § | | |

| | | |
|---|---|---|
| VIAAS INC., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | **CAUSE NO. WA-22-CV-1046-KC** | |
| § | | |
| ADT LLC, § | | |
| § | | |
| Defendant. § | | |

| | | |
|---|---|---|
| VIAAS INC., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | **CAUSE NO. WA-22-CV-1047-KC** | |
| § | | |
| CISCO SYSTEMS INC., § | | |
| § | | |
| Defendant. § | | |

| | |
|---|---|
| **VIAAS INC.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | **CAUSE NO. WA-22-CV-1048-KC** |
| § | |
| **GOOGLE LLC,** § | |
| § | |
| Defendant. § | |

| | |
|---|---|
| **VIAAS INC.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | **CAUSE NO. WA-22-CV-1052-KC** |
| § | |
| **VIVINT SMART HOME, INC. and** § | |
| **VIVINT, INC.,** § | |
| § | |
| Defendants. § | |

## ORDER

On this day, the Court considered the following motions: (1) Defendants Amazon.Com Inc. and Ring LLC's Motion to Dismiss (the "Amazon Motion"), ECF No. 13, in cause number WA-22-CV-1041-KC; (2) Defendant ADT LLC's Motion to Dismiss (the "ADT Motion"), ECF No. 17, in cause number WA-22-CV-1046-KC; (3) Defendant Cisco Systems Inc.'s Motion to Dismiss for Failure to State a Claim, ECF No. 11, in cause number WA-22-CV-1047-KC; (4) Defendant Cisco Systems Inc.'s Motion to Change Venue (the "Cisco Venue Motion"), ECF No. 27, in cause number WA-22-CV-1047-KC; (5) Defendant Cisco Systems Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 32, in cause number WA-22-CV-1047-KC; (6) Defendant Google LLC's Motion to Dismiss, ECF No. 10, in cause number WA-22-CV-1048-KC; and (7) Defendant Vivint Inc.'s Motion to Dismiss, ECF No. 35, in cause

number WA-22-CV-1052-KC (collectively, the "Motions"). For the following reasons, the Motions are **GRANTED IN PART**, insofar as they seek dismissal of Plaintiff's claims for lack of standing, and are otherwise **DENIED AS MOOT**.

## I.     BACKGROUND

In this group of five related lawsuits, Plaintiff claims that each Defendant has infringed two patents related to video surveillance technology: United States Patent Nos. 8,558,888 (the "'888 Patent") and 9,472,069 (the "'069 Patent") (collectively, the "Patents"). Compl. ¶¶ 19, 26, ECF No. 1, cause no. WA-22-CV-1041-KC; Compl. ¶¶ 18, 25, ECF No. 1, cause no. WA-22-CV-1046-KC; Compl. ¶¶ 18, 25. ECF No. 1, cause no. WA-22-CV-1047-KC; Compl. ¶¶ 18, 25, ECF No. 1, cause no. WA-22-CV-1048-KC; Am. Compl. ¶¶ 19, 26, ECF No. 17, cause no. WA-22-CV-1052-KC.

The following facts are derived from the allegations in Plaintiff's Complaints, as well as evidence submitted by Defendants in support of their respective Motions, and evidence submitted by Plaintiff with its responses. *See Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334, 1341 (Fed. Cir. 2022) (citing *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)). All Defendants have made largely the same arguments and submitted essentially the same documentation in support of their Rule 12(b)(1) Motions.[1] *Compare, e.g.*, Amazon Mot. 9–15, *with, e.g.*, ADT Mot. 9–12. Plaintiff has submitted the same four evidentiary exhibits in response to all but one of the Rule 12(b)(1)

---

[1] Some Defendants have made additional, varying arguments for dismissal and transfer, on non-jurisdictional grounds. *See, e.g.*, Cisco Venue Mot. The Court is obliged to consider motions to dismiss on jurisdictional grounds first. *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). For the reasons discussed below, Plaintiff lacks standing to sue Defendants for infringement of the '888 and '069 Patents, stripping the Court of jurisdiction over these cases. Accordingly, Defendants' requests for transfer or dismissal on non-jurisdictional grounds are moot.

Motions,[2] and its response briefs are, for the most part, materially indistinguishable from one another. *Compare, e.g.*, Resp. Mot. Dismiss 2–5, ECF No. 37, cause no. WA-22-CV-1047-KC, *with, e.g.*, Resp. Mot. Dismiss 2–3, 6, ECF No. 22, cause no. WA-22-CV-1048-KC. Each Defendant also filed a similar reply brief. *Compare, e.g.*, Cisco Reply 1–4, ECF No. 38, cause no. WA-22-CV-1047-KC, *with, e.g.*, Vivint Reply 1–7, ECF No. 37, cause no. WA-22-CV-1052-KC. Because the issue at hand—Plaintiff's standing to assert infringement of the two patents—turns on chain-of-title issues that do not vary from defendant to defendant, this uniformity is unsurprising. The Court has conducted a careful review of the record in all five cases. But in the interest of clarity and expediency, all references below are to the record in cause number WA-22-CV-1041-KC, unless otherwise noted.

    A.    **The Patents' Chain of Title**

        1.    **Roskowski to Third Iris**

Both Patent '888 and Patent '069 have one named inventor: Steven Goddard Roskowski. Compl. Ex. A (the "'888 Patent") 1, ECF No. 1-1; Compl. Ex. B (the "'069 Patent") 1, ECF No. 1-1.[3] Defendants have submitted evidence showing that on March 2, 2009, Roskowski assigned "the entire right, title and interest" to the inventions that would later become protected by the '888 and '069 Patents, while the Patents were still in the application stage. Amazon Mot. 3–5; Amazon Mot. Ex. A (the "2009 Agreement"), at 2, ECF No. 13-2. The assignee is listed as Third Iris Corp., a Cayman Islands corporation. 2009 Agreement 2. Plaintiff does not discuss

---

[2] Plaintiff's response to Vivint's Rule 12(b)(1) Motion does not contain attached exhibits, but it purports to contain the same four exhibits included in Plaintiff's other responses. *See* Resp. Mot. Dismiss 1, ECF No. 36, cause no. WA-22-CV-1052-KC.

[3] The parties' exhibits often display several different series of pagination. For ease of reference, all citations in this Order are to the page numbers superimposed by the Court's Electronic Case Filing ("ECF") System.

4

the 2009 Agreement in its briefing, but purports to agree with Defendants that "at some point *Third Iris* became the owner of the Patents-in-Suit." Resp. 5 (emphasis added), ECF No. 21.

### 2. Third Iris to Barracuda Networks, Inc.

Plaintiff has submitted documents evincing that, effective April 30, 2015, Third Iris, Inc., a Delaware corporation, dissolved. Resp. Ex. A ("Certificate of Dissolution of Third Iris, Inc."), ECF No. 21-2. Third Iris, Inc.'s parent company was listed on a tax form as Barracuda Networks, Inc. ("Barracuda"). Resp. Ex. B ("Corporate Dissolution or Liquidation, IRS Form 966"), ECF No. 21-3. Defendants do not challenge the authenticity of these dissolution documents, but they point out that Third Iris, Inc., the Delaware corporation, is not the same entity as Third Iris Corp., the Cayman Islands corporation. Amazon Mot. 11; Amazon Reply 1–3, ECF No. 23. Plaintiff does not acknowledge, attempt to explain, or otherwise engage with the distinction between Third Iris, Inc. and Third Iris Corp in its Response briefs. *See generally* Resp.[4]

### 3. Barracuda to Plaintiff

Both Plaintiff and Defendants have submitted a Bill of Sale, Assignment and Assumption Agreement (the "2017 Bill of Sale"), entered between Barracuda and Plaintiff on May 31, 2017, and amended on June 9, 2017. Amazon Mot. Ex. D, ECF No. 13-5; Resp. Ex. C, ECF No. 21-4. Schedule 1.04, Section 2, of the Amendment to the 2017 Bill of Sale states that "Buyer [Plaintiff, VIAAS Inc.] may request transfer of the patents issued with the following application numbers from Seller [Barracuda] and Seller will transfer such patents upon request. Buyer will bear all

---

[4] Nor has Plaintiff sought leave to file a sur-reply, after the distinction between the two entities figured even more prominently in the Reply briefs. *See* W.D. Tex. Local Rule CV-7(E)(1) ("Absent leave of court, no further submissions [beyond a response in opposition and a reply in support] on the motion are allowed.").

reasonable costs." Amazon Mot. Ex. D, at 9. The listed application numbers include the applications that were later issued as the '888 and '069 Patents. *Id.*; '888 Patent 1; '069 Patent 1.

Plaintiff has also submitted a series of emails between Matt Connolly, Plaintiff's President, and Sophia Valentim, a Barracuda representative. *See* Resp. Ex. D, ECF No. 21-5. The emails, which were transmitted on June 12, 2017, read:

> [Connolly]: Sophia,
>
> I'd like to begin the patent assignment process. Is an email request sufficient?
>
> VIAAS, Inc. ("Buyer") requests transfer of the patents issued with the following application numbers from Barracuda Networks, Inc. ("Seller") per Schedule 1.04, Section 2 of the AMENDMENT NO.1 TO ASSET PURCHASE AGREEMENT dated June 9, 2017. VIAAS, Inc. will bear all reasonable costs associated with such transfer.
>
> [list that includes the application numbers corresponding to the '888 and '069 Patents]
>
> If not good enough to get the assignment started, let me know the preferred request format.
>
> [email signature omitted]
>
> [Valentim]: Hi Matt. I'll check with our trademark counsel what the process is on their end and should have an answer back by tomorrow.
>
> [email signature omitted]
>
> [Connolly]: Much appreciated, as always [smiling face emoticon]
>
> [Valentim]: Hi Matt. No problem [smiling face emoticon] The request below is fine, and there are a couple ways to proceed. Your IP attorney can start the process of filing the required Patent Trademark Office forms, or we can have our trademark counsel start the transfer process from their side. Do you have a preference?

*Id.* at 1–3. Plaintiff has not submitted any further communications between Plaintiff and Barracuda. Nor has Plaintiff submitted the forms referenced in Valentim's final email, nor any

other documents evincing that the forms were completed, or that the assignment process was otherwise finalized. *See* Resp. 5.

## II. DISCUSSION

### A. Choice of Law

Generally, "Federal Circuit law applies to causes of action within the exclusive jurisdiction of the Federal Circuit," which includes patent infringement claims. *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1368 (Fed. Cir. 2002) (collecting cases). But even in cases within the Federal Circuit's purview, the law of the regional circuit in which the district court presides applies to "purely procedural question[s]." *Garber v. Chi. Mercantile Exch.*, 570 F.3d 1361, 1363–64 (Fed. Cir. 2009). Questions are purely procedural only when "they do not (1) pertain to patent law, . . . (2) bear an essential relationship to matters committed to [the Federal Circuit's] exclusive control by statute, or (3) clearly implicate the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction." *Int'l Nutrition Co. v. Horphag Rsch. Ltd.*, 257 F.3d 1324, 1328 (Fed. Cir. 2001) (citations omitted).

"[T]he patent statutes have long been recognized as the law that governs who has the right to bring suit for patent infringement." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1337 (Fed. Cir. 2007); *see also Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010). The Court thus applies Federal Circuit law to analyze the substantive question of whether Plaintiff has standing to bring these lawsuits. *See Abraxis Bioscience*, 625 F.3d at 1364; *see, e.g.*, *Induction Innovations, Inc. v. Pacholok*, No. 13-cv-5102, 2014 WL 4922350, at *3–7 & n.4 (N.D. Ill. Sept. 30, 2014). However, the procedural and evidentiary standards governing Rule 12(b)(1) motions are "nonpatent-specific issue[s]," for which regional circuit precedent controls. *Mitek Sys.*, 34 F.4th at 1341. Therefore, while the Court looks to Federal Circuit

precedent to resolve the underlying standing question, it does so within the architecture of the Rule 12(b)(1) procedures established by the Fifth Circuit.  *See id.*

### B. Rule 12(b)(1) Standard

Federal courts are courts of limited jurisdiction.  *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *People's Nat'l Bank v. Off. of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004).  Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims.  *Exxon Mobil*, 545 U.S. at 552; *People's Nat'l Bank*, 362 F.3d at 336.  A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

A federal court must consider a motion to dismiss pursuant to Rule 12(b)(1) before any other challenge because a court must have subject matter jurisdiction before determining the validity of a claim.  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).  The party asserting jurisdiction constantly bears the burden of proof to show that jurisdiction does in fact exist.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Motions to dismiss for lack of subject matter jurisdiction may either be "facial" or "factual."  *Mitek Sys.*, 34 F.4th at 1341 (quoting *Superior MRI Servs.*, 778 F.3d at 504).  A facial challenge accepts the facts alleged in the complaint as true and argues that they do not establish jurisdiction.  *See id.* (citing *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012)).  A factual challenge, by contrast, entails the submission of evidence that purports to disprove the plaintiff's jurisdictional allegations.  *Id.* (citing *Superior MRI Servs.*, 778 F.3d at 504).  "To defeat a factual attack, a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the

8

evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Id.* (internal quotation marks omitted) (quoting *Superior MRI Servs.*, 778 F.3d at 504).

### C.     Analysis

Each of the Defendants has mounted a factual challenge to the Court's subject matter jurisdiction, by attaching evidence to their respective Rule 12(b)(1) motions. *See id.* (citing *Superior MRI Servs.*, 778 F.3d at 504); Amazon Mot. Exs. A–K, ECF Nos. 13-2–13-12. Defendants argue that Plaintiff lacks standing to sue for infringement of the '888 and '069 Patents because of defects in the chain of title from the original patentee—Roskowski—to Plaintiff.  Amazon Mot. 9–15.

"Standing is a jurisdictional question." *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015).  As in all cases filed in federal court, for a plaintiff claiming patent infringement to have standing under Article III of the Constitution, they must have suffered an injury that is causally connected to the defendant's conduct and redressable by a favorable decision.  *Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1313 (Fed. Cir. 2005) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010).

Parties with exclusionary rights fall into several categories: patentees, assignees, and licensees. *Id.* at 1264–65; *see also Alps S.*, 787 F.3d at 1382–84.  "Under the Patent Act [the "Act"], a patent grants the patentee the right to exclude others from making, using, selling, or offering to sell a patented invention within the United States, as well as the right to exclude others from importing a patented invention into the United States." *WiAV Sols.*, 631 F.3d at

1264 (citing 35 U.S.C. § 271(a)). The Act also expressly confers the right to initiate a "civil action for infringement" of one or more of those rights upon the "patentee." *Id.* (quoting 35 U.S.C. § 281). And the term "patentee includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id.* (quoting 35 U.S.C. § 100(d)). Thus, "if the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee [i.e., the successor in title] may be deemed the effective patentee under 35 U.S.C. § 281." *Id.* (alteration omitted) (quoting *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005)).

"The Patent Act, however, does not limit the right to sue to only patent owners and assignees." *Id.* (citing *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001)). Short of assigning the full panoply of a patent's exclusionary rights, a patentee may license out only some of them. *Id.* at 1264–65. In other words, "a patent is a bundle of rights which may be retained in whole or in part, divided and assigned." *Morrow*, 499 F.3d at 1341 n.8 (first citing *Intellectual Prop. Dev.*, 248 F.3d at 1342; and then citing 35 U.S.C. § 261). "[T]o have 'standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights.'" *WiAV Sols.*, 631 F.3d at 1265 (quoting *Ortho Pharma. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995)). Owners of partial exclusionary rights in a patent are known as exclusive licensees. *Id.* at 1264–65. While exclusive licensees have constitutional standing to sue for infringement of their portion of patent rights, prudential concerns ordinarily demand that the patentee also be joined as a party. *Id.* at 1265 n.1; *see also Alps S.*, 787 F.3d at 1382–83 ("If [ ] the transferee or licensee does not hold all substantial rights, it may 'sue third parties only as a co-plaintiff with the patentee.'" (quoting *Mentor H/S, Inc. v. Med. Device All., Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001))).

But not all licenses confer exclusionary rights.  For instance, "[a] license may amount to no more than a covenant by the patentee not to sue the licensee for making, using or selling the patented invention, the patentee reserving the right to grant others the same right."  *Ortho Pharma. Corp.*, 52 F.3d at 1031.  Such a "nonexclusive" or "bare" licensee "suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee."  *WiAV Sols.*, 631 F.3d at 1265 (quoting *Ortho Pharma Corp.*, 52 F.3d at 1031–32).

"Standing must be present at the time the suit is brought."  *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 970 (Fed. Cir. 2017) (quoting *Sicom Sys.*, 427 F.3d at 975–76).  "The party bringing the action bears the burden of establishing that it has standing."  *Id.* (quoting *Sicom Sys.*, 427 F.3d at 976).  Because Defendants' Rule 12(b)(1) motions raise a factual attack, Plaintiff bears the burden of establishing standing by a preponderance of the evidence.  *See Mitek Sys.*, 34 F.4th at 1341 (citing *Superior MRI Servs.*, 778 F.3d at 504).

> 1. **Plaintiff has not established that Third Iris Corp. ever transferred exclusionary rights to the Patents to Barracuda, obviating any subsequent assignment from Barracuda to Plaintiff.**

The parties agree that the Patents' inventor, Roskowski, assigned them to a company whose name begins with "Third Iris."  Amazon Mot. 3, 5; Resp. 5.  But Defendants argue that there is no evidence that Third Iris ever relinquished its rights to the Patents, such that any ensuing assignment from Barracuda to Plaintiff was invalid.  Amazon Mot. 9–11.  Plaintiff responds that when Third Iris dissolved, its ownership interest in the Patents transferred by operation of law to Barracuda, its parent company.  Resp. 2, 4.

Certainly, "there is nothing that limits assignment as the only means for transferring patent ownership. . . .  [O]wnership of a patent may [also] be changed by operation of law."  *Sky*

11

*Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1356 (Fed. Cir. 2008) (first alteration in *Sky Techs.*)).  But Plaintiff's argument fails because it conflates two distinct "Third Iris" entities, without explanation.  The records submitted by Plaintiff show that a Delaware corporation, Third Iris, Inc., dissolved, and that its parent company was Barracuda.  Resp. Exs. A, B.  But the 2009 Agreement assigned the Patents from Roskowski to Third Iris Corp., a Cayman Islands corporation.  2009 Agreement 2.  Plaintiff offers no justification for its implied contention that the Court should treat Third Iris, Inc. and Third Iris Corp. as the same entity.  Indeed, Plaintiff does not even acknowledge the distinction, despite Defendants thoroughly raising the issue, including in the Amazon Motion.  Amazon Mot. 11; *see generally* Resp.

Plaintiff bears the burden of demonstrating its standing to sue for infringement by a preponderance of the evidence.  *See Mitek Sys.*, 34 F.4th at 1341 (citing *Superior MRI Servs.*, 778 F.3d at 504).  By offering no basis for the Court to reconcile the evident differences between the two Third Irises, Plaintiff has not shown it is more likely than not that Third Iris, Inc. ever obtained rights to the Patents.  And because there is no evidence in the record that Third Iris Corp. ever assigned the Patents to anyone, let alone Barracuda or Plaintiff, the chain of title is broken, and Plaintiff has not demonstrated that it has standing to bring these lawsuits.[5]  *See, e.g.*, *Advanced Video Techs, LLC v. HTC Corp.*, 103 F. Supp. 3d 409, 418–26 (S.D.N.Y. 2015)

---

[5] Defendants also argue that even if the Court were to assume, counterfactually, that Roskowski had transferred the Patents to Third Iris, Inc., instead of Third Iris Corp., Barracuda would not have automatically obtained its subsidiary's assets by operation of Delaware law until after a three-year statutory winding down period.  Amazon Reply 3–4.  And that period was not complete until after Barracuda purportedly transferred the Patents to Plaintiff, rendering any such transfer invalid.  *See id.* at 4.  Because Plaintiff lacks standing for two other independent reasons, the Court does not address this argument, which hinges on issues of Delaware state law.  *See Sky Techs.*, 576 F.3d at 1379 ("[S]tate law controls any transfer of patent ownership by operation of law not deemed an assignment."); *see, e.g.*, *Lee v. Morial*, 37 F. App'x 88, 2002 WL 971519, at *5 (5th Cir. 2002) (declining to reach a question of state law when it was unnecessary to the outcome of the case).

(dismissing for lack of constitutional standing where the plaintiff's chain of title to the patents was broken), *aff'd*, 677 F. App'x 684 (Fed. Cir. 2017).

### 2. Plaintiff has not established that Barracuda ever assigned or exclusively licensed the Patents to Plaintiff.

Defendants also argue that even if the Court were to assume that Barracuda acquired the Patents from one or the other Third Iris entity by operation of law, Barracuda never actually assigned the Patents to Plaintiff. Amazon Mot. 11–14. Instead, Defendants argue, it only promised to assign them. *Id.*

A promise to assign is not an assignment. *Abraxis Bioscience*, 625 F.3d at 1364–65. "[C]ontracts that obligate the owner to grant rights in the future do not vest legal title to the patents in the assignee." *Id.* (citing *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841–42 (Fed. Cir. 2009)). Instead, "a subsequent written agreement is necessary to consummate the assignment." *Id.* at 1365 (citing *IpVenture, Inc. v. ProStar Comput., Inc.*, 503 F.3d 1324, 1327 (Fed. Cir. 2007)). Whether a contract amounts to an assignment or a mere promise to assign requires a court to "carefully consider the intention of the parties and the language of the grant." *James v. J2 Cloud Servs., LLC*, 887 F.3d 1368, 1374 (Fed. Cir. 2018) (quoting *Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1265 (Fed. Cir. 2007)).

Language such as "hereby conveys, transfers, and assigns" and "does hereby grant and assign" has been construed by the Federal Circuit to effect an assignment. *Abraxis Bioscience*, 625 F.3d at 1364 (first quoting *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000); and then quoting *DDB Techs, L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008)). But the words "agree to assign" and "will be assigned," by contrast, have been

13

held to establish nothing more than a promise to assign. *Id.* at 1365 (first quoting *IpVenture*, 503 F.3d at 1327; and then quoting *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580–81 (Fed. Cir. 1991)). Thus, "present tense executing verb[s]" tend to evince an assignment, while "passive verbs in indefinite or future tense" ordinarily indicate only a promise to assign. *Omni MedSci, Inc. v. Apple Inc.*, 7 F.4th 1148, 1153 (Fed. Cir. 2021) (collecting cases).

Here, the 2017 Bill of Sale states that Plaintiff "may request transfer of the patents," and Barracuda "will transfer such patents upon request," with Plaintiff to "bear all reasonable costs." Amazon Mot. Ex. D, at 9. This "may request" and "will transfer" language, with its "indefinite or future tense," bears a strong resemblance to the sort of contract language that the Federal Circuit has held to create only a promise to assign. *See Omni MedSci*, 7 F.4th at 1153. Indeed, Plaintiff appears to concede that the 2017 Bill of Sale did not amount to an assignment. Resp. 5 ("VIAAS agrees that contracts that obligate the owner to grant rights in the future do not vest legal title to the patents in the assignee. . . . [and] is not relying on Barracuda's 'promise to assign' the Patents-in-Suit.").

Instead, Plaintiff argues that by emailing Barracuda's representative three days later, Plaintiff made the "request" contemplated by the parties' agreement, and the assignment was thereby completed. *See* Resp. 5. Plaintiff references no authority for the proposition that an email exchange could amount to a written instrument sufficient to effect an assignment within the meaning of the Patent Act.[6] And the Federal Circuit has rejected other writings that fall short of a signed, written contract, such as the minutes from a corporate meeting, which were held to merely reflect an oral agreement to assign. *Gaia Techs., Inc. v. Reconversion Techs., Inc.*,

---

[6] Under the Act, "Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 777 (Fed. Cir. 1996) (quoting 35 U.S.C. § 261), *amended on reh'g in part*, 104 F.3d 1296 (Fed. Cir. 1996).

93 F.3d 774, 779 (Fed. Cir. 1996), *amended on reh'g in part*, 104 F.3d 1296 (Fed. Cir. 1996). But even if the Court assumes that an email chain could in some circumstances suffice, it would still need to contain the kind of "present tense executing" language necessary to effectuate an assignment. *See Omni MedSci*, 7 F.4th at 1153.

On their own terms, the emails submitted by Plaintiff reflect, at most, another unfulfilled promise to assign the Patents. In those emails, Plaintiff's president asks a Barracuda representative to "begin the patent assignment process." Resp. Ex. D, at 2. Barracuda responds by offering "a couple ways to proceed," and asks if Plaintiff has a preference among them. *Id.* at 1. No language in the emails purports to actually assign the Patents. *See id.* Nothing in the record indicates that Plaintiff ever responded to Barracuda's last email, or that any additional steps were ever taken to finalize the assignment. *See generally* Resp. Exs. Instead, the only evidence of a subsequent transaction involving the Patents tends to confirm that the assignment was not finalized. A publicly recorded document submitted by Defendants shows that Barracuda purported to grant a security interest in the '069 Patent to a bank in August 2022. *See* Amazon Mot. Ex. K, at 7–9, 24, ECF No. 13-12. That Barracuda was still treating the '069 Patent like its property some five years after the 2017 Bill of Sale and email exchange strongly corroborates the notion that Barracuda never assigned the Patents to Plaintiff.

In sum, Plaintiff has not carried its burden to demonstrate by a preponderance of the evidence that either the 2017 Bill of Sale or the subsequent emails constituted a valid assignment of the Patents from Barracuda. Nor, as previously discussed, has Plaintiff demonstrated that Barracuda ever obtained the Patents from Third Iris Corp. Because Plaintiff has not shown that it ever obtained exclusionary rights to the Patent, it has not demonstrated that it has standing to sue for infringement of those Patents. *See WiAV Sols.*, 631 F.3d at 1264–65. And the Court

therefore does not have subject matter jurisdiction over these lawsuits. *See Alps S.*, 787 F.3d at 1382.

### 3. Plaintiff cannot cure its lack of standing by filing an amended complaint.

In some, but not all, of these cases, Plaintiff has requested leave to file an amended complaint in the event that the Court dismisses its claims. *See, e.g.*, Resp. Mot. Dismiss 9, cause no. WA-22-CV-1048-KC. But Plaintiff has not explained how amending its Complaints could change the fact that it never acquired the exclusionary rights it needs to sue for infringement of the Patents. *See id.* Moreover, "[s]tanding must be present at the time the suit is brought." *Nat'l Oilwell Varco*, 676 F. App'x at 970 (quoting *Sicom Sys.*, 427 F.3d at 975–76). Therefore, even if Plaintiff were to obtain the necessary rights to the Patents now, the Court would remain bound to dismiss the cases. *See Abraxis Bioscience*, 625 F.3d at 1366 ("[N]unc pro tunc assignments are not sufficient to confer retroactive standing." (quoting *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998))); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("[T]he jurisdictional defect cannot be cured by . . . the subsequent purchase of an interest in the patent in suit." (citing *Gaia Techs.*, 93 F.3d at 780). Accordingly, Plaintiff is denied leave to amend.

### 4. Sanctions are not warranted.

As a final matter, Amazon.Com, Inc. and Ring LLC (the "Amazon Defendants")—but none of the other Defendants—request that the Court order Plaintiff to pay the costs and fees associated with filing their Motion to Dismiss. Amazon Mot. 16; Amazon Reply 8–9. The Amazon Defendants emailed Plaintiff's counsel with a letter prior to filing their Motion, in which they identified the defects in Plaintiff's chain of title to the Patents. *Id.*; Amazon Reply

16

Ex. L, ECF No. 23-2. Plaintiff's attorney responded by attaching documents that purported to demonstrate Plaintiff's clear chain of title to the Patents, among them the certificate of dissolution for Third Iris, Inc. Amazon Reply Ex. L, at 2. The attorney for the Amazon Defendants, in turn, responded to point out the distinction between Third Iris Corp. and Third Iris, Inc., and also to reiterate their position that the 2017 Bill of Sale did not assign the Patents from Barracuda to Plaintiff. *Id.* at 1. The Amazon Defendants asked Plaintiff to voluntarily dismiss the lawsuit, and warned Plaintiff that they would likely seek an award of attorneys' fees if "forced" to file a motion to dismiss. *Id.*

The Amazon Defendants' request for fees and costs is denied, for two reasons. First, sanctions under Federal Rule of Civil Procedure 11 may only be ordered if the sanctioned party is given "notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1). This ordinarily requires "a Rule 11 motion, or an order to show cause under Rule 11(c)(3)." *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 458 (5th Cir. 2020) (citing *Brunig v. Clark*, 560 F.3d 292, 298 (5th Cir. 2009). The Amazon Defendants sought costs and fees for the first time in their Motion, but with only a cursory two-sentence request that cited no authority. Amazon Mot. 16. It was not until their Reply that they explained the basis for their sanctions request in more detail. *See* Amazon Reply 8–9. Certainly, Plaintiff could have responded to the request for an award of costs and fees in his Response brief or by seeking leave to file a sur-reply. But the Amazon Defendants' request falls short of the separate "Rule 11 motion" typically required to afford sufficient notice and opportunity to respond. *See Tejero*, 955 F.3d at 458.

More importantly, while it is a close call, the Court finds that monetary sanctions are not warranted. However, the Court admonishes Plaintiff's attorney that he has a duty to conduct a

17

diligent investigation prior to initiating any lawsuit, and that he may not knowingly persist with cases that he learns to be baseless. *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("The rule continues to require litigants to 'stop-and-think' before initially making legal or factual contentions. It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention."). Moreover, Plaintiff's attorney's failure to acknowledge—whatsoever—the difference between Third Iris, Inc., and Third Iris Corp. evinces either an egregious lack of competence or, more likely, a troubling lack of candor.[7] If Plaintiff engages in similar conduct in future cases before this Court, he does so at the risk of sanctions.

## III. CONCLUSION

For the foregoing reasons, Plaintiff lacks standing to assert infringement of the '888 and '069 patents, and the Court, therefore, lacks subject matter jurisdiction over these lawsuits. Accordingly, it is **ORDERED** that:

(1) The Amazon Motion, ECF No. 13, in cause number WA-22-CV-1041-KC, is **GRANTED** in part, **DENIED** in part, and **DENIED** as moot in part. The Motion is **GRANTED** as to the request to dismiss the case for lack of subject matter jurisdiction, **DENIED** as to the request for costs and fees, and otherwise **DENIED** as moot.

(2) The ADT Motion, ECF No. 17, in cause number WA-22-CV-1046-KC, is **GRANTED**.

---

[7] The Court notes that Plaintiff's attorney has had at least one other patent infringement case this year, in this District, dismissed for lack of standing due to defects in the chain of title. *See* Minute Entry, *Silent Comms., LLC v. Blackberry Corp.*, No. 6:22-cv-252-ADA (W.D. Tex. Feb. 14, 2023), ECF No. 49.

(3) Defendant Cisco Systems Inc.'s Motion to Dismiss for Failure to State a Claim, ECF No. 11, in cause number WA-22-CV-1047-KC, is **DENIED** as moot.

(4) The Cisco Venue Motion, ECF No. 27, in cause number WA-22-CV-1047-KC, is **DENIED** as moot.

(5) Defendant Cisco Systems Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 32, in cause number WA-22-CV-1047-KC, is **GRANTED**.

(6) Defendant Google LLC's Motion to Dismiss, ECF No. 10, in cause number WA-22-CV-1048-KC, is **GRANTED** in part and **DENIED** as moot in part. The Motion is **GRANTED** as to the request to dismiss the case for lack of subject matter jurisdiction and is otherwise **DENIED** as moot.

(7) Defendant Vivint Inc.'s Motion to Dismiss, ECF No. 35, in cause number WA-22-CV-1052-KC, is **GRANTED** in part and **DENIED** as moot in part. The Motion is **GRANTED** as to the request to dismiss the case for lack of subject matter jurisdiction and is otherwise **DENIED** as moot.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims in the following lawsuits are **DISMISSED** without prejudice for lack of subject matter jurisdiction: (1) *VIAAS Inc. v. Amazon.com Inc.*, cause no. WA-22-CV-1041-KC; (2) *VIAAS Inc. v. ADT LLC*, cause no. WA-22-CV-1046-KC; (3) *VIAAS Inc. v. Cisco Systems Inc.*, cause no. WA-22-CV-1047-KC; (4) *VIAAS Inc. v. Google LLC*, cause no. WA-22-CV-1048-KC; and (5) *VIAAS Inc. v. Vivint Smart Home Inc.*, cause no. WA-22-CV-1052-KC.[8]

---

[8] Some Defendants ask the Court to dismiss Plaintiff's claims with prejudice. *See, e.g.*, Amazon Reply 8. But dismissals for lack of subject matter jurisdiction are not judgments on the merits and must be without prejudice. *See Ashford v. United States*, 463 F. App'x 387, 395–96 (5th Cir. 2012); *Wheeler v. United States*, 11 F.3d 156, 159–60 (Fed. Cir. 1993).

**IT IS FURTHER ORDERED** that all trial dates, hearings, and deadlines in the above styled and numbered cases are **VACATED**.

**SO ORDERED**.

SIGNED this 25th day of April, 2023.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE